UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

MILLENIUM HEALTH, LLC,

                Plaintiff,

      -v-

WILLIAM GERLACH,

                Defendant.
----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/18/15

**MEMORANDUM ORDER**

15-CV-7235 (WHP) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

Plaintiff Millennium Health, LLC ("Millennium") filed this action on September 14, 2015, alleging that defendant William Gerlach breached an "Agreement Regarding Confidentiality, Non-Disclosure and Non-Competition" with Millennium through his employment with Southwest Laboratory ("Southwest"). Complaint, ¶ 4 (Dkt. No. 1). After a settlement conference before me, the parties entered into a Stipulation and Order Granting Preliminary Relief ("Stipulation and Order") (Dkt. No. 24), which set out a multi-step process to expedite a resolution of this dispute. As part of this process, the parties agreed to an expedited discovery period, in which Gerlach would produce, *inter alia*, documents responsive to five specified categories. Stipulation and Order, at 3. On December 4, 2015, Millennium notified the Court that a discovery dispute had arisen in the course of this expedited discovery with regard to redactions in certain text messages that Gerlach had produced. Pl.'s Dec. 4, 2015 Letter-Motion (Dkt. No. 27). Judge Pauley referred this discovery dispute to me on December 7, 2015. (Dkt. No. 28). Counsel

1

for Gerlach responded to Millennium's letter on December 9, 2015. Def.'s Response to Pl.'s Dec. 4, 2015 Letter-Motion (Dkt. No. 29).

The Court held a telephone conference with the parties on December 10, 2015 at which the parties agreed to have the Court review the disputed redactions *in camera*. Having now reviewed these documents, the Court rules that the vast majority of Gerlach's redactions are proper because they are not responsive to the five specified categories of discovery, are privileged, or both. However, the Court orders production of two of the redacted text messages, as detailed below, and directs counsel for Gerlach to supplement their submission to the Court with respect to why four other messages were redacted and should not be produced.

## I. Applicable Legal Principles

In reviewing the redacted documents, the Court has assumed that the following legal principles apply to the privileges or other bases for redacting documents that Gerlach has invoked. It should go without saying that even if these privileges do not apply, if the information sought is not relevant, it need not be produced. *See, e.g., Acorn v. Cnty. of Nassau*, No. 05-CV-2301 (JFB) (WDW), 2008 WL 708551, at *5 (E.D.N.Y. Mar. 14, 2008) ("The Court finds that those documents relating to the RFP process that are not privileged are nevertheless not relevant to this litigation and thus need not be provided.").

### A. Attorney-Client Privilege and Work Product Protection

"In New York, the attorney-client privilege protects confidential communications between attorney and client relating to legal advice." *AIU Ins. Co.*

v. *TIG Ins. Co.*, No. 07-CV-7052 (SHS) (HBP), 2008 WL 4067437, at *6 (S.D.N.Y. Aug. 28, 2008) (citing N.Y. C.P.L.R. § 4503(a)).[1] Attorney-client privilege applies "(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived." *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1036 (2d Cir. 1984) (citations omitted).

Similarly, an attorney's work product is protected if it "was created because of anticipated litigation, and would have not been prepared in substantially similar form but for the prospect of that litigation." *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998). The work product privilege inures to the benefit of the parties – and not only attorneys – because Federal Rule of Civil Procedure 26(b) also protects documents prepared "by . . . . [a] party" in anticipation of litigation or for trial. Fed. R. Civ. P. 26(b)(3)(A), *see, e.g.*, *United States v. Stewart*, 287 F. Supp. 2d 461, 466-67 (S.D.N.Y. 2003). Work product protection will not be lost simply by disclosure of the work to a third party; it is "waived only when documents are used in a manner contrary to the doctrine's purpose, when disclosure substantially increases the opportunity for potential adversaries to obtain the information."

---

[1] In diversity actions such as this one, "where state law supplies the rule of decision, state law also controls privilege issues." *AIU Ins. Co.*, 2008 WL 4067437, at *5 (citations omitted).

3

*Schanfield v. Sojitz Corp. of Am.*, 258 F.R.D. 211, 214 (S.D.N.Y. 2009) (internal quotation marks and citations omitted).

### B. Joint Defense Privilege

The joint defense privilege is an exception to the general rule that disclosure of confidential privileged material to a third party waives any applicable privilege. *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 139 (S.D.N.Y. 2012) (citing *Sokol v. Wyeth, Inc.*, No. 07-CV-8442 (SHS) (KNF), 2008 WL 3166662, at *5 (S.D.N.Y. Aug. 4, 2008)). It preserves the confidentiality of communications passing from one party to another party where a "joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *Id.* (citing *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989)). The joint defense privilege attaches to the "mutual sharing of strategies, mental impressions, and/or attorneys' thoughts and theories with co-parties." *Lugosch v. Congel*, 219 F.R.D. 220, 240 (N.D.N.Y. 2003) (citing *Transmirra Prod. Corp. v. Monsanto Chem. Co.*, 26 F.R.D. 572, 578 (S.D.N.Y. 1960)). However, "[t]he doctrine 'is not an independent source of privilege or confidentiality' so that '[i]f a communication is not protected by the attorney-client privilege or the attorney work-product doctrine, the common interest doctrine does not apply.'" *Fireman's Fund Inc. Co.*, 284 F.R.D. at 139 (citing *Sokol*, 2008 WL 3166662, at *5). The joint defense privilege may apply as between two individuals within a joint defense effort, regardless of the presence of an attorney. *Gucci Am., Inc. v. Gucci*, No. 07-CV-6820 (RMB) (JCF), 2008 WL 5251989, at *1 (S.D.N.Y. Dec. 15, 2008) ("If information that is otherwise

4

privileged is shared between parties that have a common legal interest, the privilege is not forfeited even though no attorney either creates or receives that communication. For example, if an attorney provides legal advice to a client . . . the client can repeat that advice to a co-defendant outside the presence of any attorney without causing the privilege to be waived.").

C. Proprietary Information

"[T]here is no absolute privilege for trade secrets and similar confidential information." *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362 (1979) (quoting 8 C. Wright & A. Miller, Federal Practice and Procedure § 2043 at 300 (1970)). Where documents sought in discovery contain trade secrets, they may be discoverable where a party demonstrates that "disclosure of the confidential information is relevant and necessary." *Chembio Diagnostic Sys., Inc. v. Saliva Diagnostic Sys., Inc.*, 236 F.R.D. 129, 136 (E.D.N.Y. 2006).

Under New York State law, an individual who "objects to disclosure on the ground that the requested information constitutes a trade secret bears only a minimal initial burden of demonstrating the existence of a trade secret." *Ferolito v. Arizona Beverages USA, LLC*, 119 A.D.3d 642, 644 (2d Dep't 2014). A trade secret is generally defined as "a formula, pattern, device or compilation of information used in one's business which confers a competitive advantage over those in similar businesses who do not know or use it." *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 968 (2d Cir. 1997) (quoting Restatement of Torts § 757 cmt. b, at 5 (1939)). While a trade secret "cannot be widely known, absolute

5

secrecy is not required"; instead it must "be veiled in sufficient secrecy that except by use of improper means, there would be difficulty in acquiring the information." *Telerate Sys., Inc. v. Caro*, 689 F. Supp. 221, 232 (S.D.N.Y. 1988) (internal quotation marks and citations omitted); *A.H. Emery Co. v. Marcan Prods. Corp.*, 389 F.2d 11, 16 (2d Cir. 1968) ("In any context 'secrecy' is a relative term and, as used in the law of trade secrets, it is not an absolute but an equitable concept.") (citation omitted). The Court assumes for the purposes of the present dispute that the protection afforded to a company's trade secrets would not be impacted by their disclosure to a potential employee.

Once a trade secret has been asserted, the burden shifts to the party seeking disclosure who "must show that such information is indispensable to the ascertainment of truth and cannot be acquired in any other way." *Ferolito*, 119 A.D.3d at 644 (internal quotation marks and citations omitted); *Deas v. Carson Prods. Co.*, 172 A.D.2d 795, 796 (2d Dep't 1991); *see also Curtis v. Complete Foam Insulation Corp.*, 116 A.D.2d 907, 909 (3d Dep't 1986) (requiring that the information sought is "indispensable to support plaintiffs' claims").

## II. Application to Gerlach's Redactions

Pursuant to the parties' Stipulation and Order, Gerlach is required to produce all documents that respond to five categories:

1. All Millennium documents and information;

2. All documents and communications related to any prohibitions or limitations upon Mr. Gerlach's employment with Southwest Laboratory;

6

3.      All documents reflecting communication or coordination between Mr. Gerlach and any third party, including but not limited to Marc Cullinan ("Cullinan"), and/or any current or former Millennium third-party vendor, with respect to Mr. Gerlach's prospective employment with Southwest Laboratory, and performance of job responsibilities for Southwest Laboratory in violation of the Non-Compete Agreement;

4.      All documents reflecting communications between Mr. Gerlach and any current or former Millennium clients with whom he had contact or did business (in person or through the direction or supervision of others) in the last two years of his employment with Millennium; and

5.      All communications between Mr. Gerlach and any current or former Millennium employees who were employed by Millennium within 18 months preceding August 25, 2015, including Cullinan, from June 1, 2015, to the present.

Stipulation and Order, at 3-4. Counsel for Gerlach have produced 219 pages of documents and communications as well as a Privilege Log that states the grounds for 105 redactions within those records. Def.'s Response to Pl.'s Dec. 4, 2015 Letter-Motion (Dkt. No. 29), at 1. The Court has reviewed the redactions and concludes that, except as set out below, the redactions are appropriate because their content is either unresponsive to the five required categories, privileged as described in applicable law, or both.

Regardless of the particular bases for withholding information that Gerlach claimed in his Privilege Log, the vast majority of the redactions were properly made because the redacted information was not responsive to the five categories set out in the Stipulation and Order. Accordingly, on this basis alone, Gerlach is not obligated to produce this information.

Many of the redactions are alternatively protected under the joint defense privilege. Counsel for Gerlach have represented that Gerlach entered into a written joint defense agreement with Southwest and its managers, including Ashton Kouzbari and Marc Cullinan. *Id.*, at 4. Counsel further assert that these parties anticipated litigation against them by Millennium as of August 2015. *Id.* Consequently, any communications between these individuals that discuss their communications with attorneys and/or information that was received from or provided to their attorneys for the purpose of legal advice or services are protected by the attorney-client privilege and the work product doctrine because the parties were engaged in a joint defense effort. With two exceptions, all other redacted communications that discuss the pending or related litigation or the parties' related impressions were not responsive to the five identified categories of discovery.

Two redactions contain information that is arguably responsive, not protected by any privilege, and consequently must be produced. They are identified as Nos. 15 and 63 in Gerlach's privilege log. While the first portion of No. 15 was appropriately redacted because it describes attorneys' communications and impressions, the statement following the second hyphen and beginning "I'm so fired up . . ." is not protected because it simply reflects Gerlach's state of mind, is unconnected to any legal strategy or attorney communication, and appears responsive to the third category of discovery. No. 63 should also be produced because, although it was expressed in the midst of a discussion about litigation, it refers to a broader impression about Millennium's motives and appears connected

8

to communications with an unidentified individual who is presumably outside the joint defense agreement.

Finally, the vast majority of redactions that allegedly contain "Southwest Laboratory Proprietary/Confidential Information" are either not responsive to the five categories of discovery or appear to contain trade secrets that are unrelated to Millennium's claims and thus cannot be said to be indispensable to its case. That said, four redactions appear to relate to the locations that Gerlach will target as a Southwest sales representative and may indicate potential overlap in the territories he covered in his prior employment with Millennium. If this is the case, although these documents likely contain confidential information, they appear to be responsive to the third category of discovery. These redactions are identified as numbers 79, 80, 81, and 105 in Gerlach's privilege log. However, the Court lacks sufficient information with respect to these redactions to determine whether they must be produced. Accordingly, counsel for Gerlach are directed to supplement their submission to the Court with an *ex parte* letter to explain why these redactions were made and should not be subject to discovery. This letter shall be submitted by December 23, 2015.

### III. Conclusion

As set forth in this Memorandum Order, the redactions in the documents presented to the court were appropriate except as noted. The information in redactions identified as 15 and 63 in Gerlach's production log must be produced.

Gerlach shall make his additional submission by December 23, 2015.

The Clerk is directed to close Docket No. 27.

**SO ORDERED.**

Dated: New York, New York
December 18, 2015

JAMES L. COTT
United States Magistrate Judge